1  Steven R. Platt (SBN 245510)
   (splatt@pmcos.com)
2  PARKER, MILLIKEN, CLARK, O'HARA
   & SAMUELIAN. P.C.
3  555 S. Flower Street, 30th Floor
4  Los Angeles, CA 90071
   Telephone: (213) 683-6500
5  Facsimile:  (213) 683-6669

6  Katharine R. Latimer (admitted *pro hac vice*)
7  (klatimer@hollingsworthllp.com)
   Kathryn S. Jensen (admitted *pro hac vice*)
8  (kjensen@hollingsworthllp.com)
   HOLLINGSWORTH LLP
9  1350 I Street NW
   Washington, DC 20005
10 Telephone: (202) 898-5800
11 Facsimile:  (202) 682-1639

12 Attorneys for Defendant
    NOVARTIS PHARMACEUTICALS
13  CORPORATION

14
                   **UNITED STATES DISTRICT COURT**
15
       **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**
16

17 | JENNIFER QUINN-WHITE AND | Case No. 2:16-CV-04300-PSG-AGR |
   | KERRY WHITE, | |

18 |                | **NOVARTIS PHARMACEUTICALS** |
   |     Plaintiffs, | **CORPORATION'S MEMORANDUM** |
19 |                | **OF POINTS AND AUTHORITIES IN** |
   |     v.         | **SUPPORT OF MOTION TO** |
20 |                | **DISMISS PURSUANT TO RULES** |
21 | NOVARTIS PHARMACEUTICALS | **12(b)(6)** |
   | CORPORATION, | |
22 |                | |
   |     Defendant. | Hearing Date:  October 17, 2016 |
23 |                | Time: 1:30 P.M. |
24 |                | Judge: Philip S. Gutierrez |
   |                | Courtroom: 880 |
25

26

27

28

NOVARTIS'S MPA ISO MOTION TO DISMISS

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................ 1

FACTUAL BACKGROUND....................................................................... 2

ARGUMENT.............................................................................................. 6

    I.     STANDARD ON RULE 12(b)(6) MOTION TO DISMISS............... 6

    II.    PLAINTIFFS' CLAIMS FAIL BECASE NOVARTIS OWED
            PLAINTIFFS NO DUTY AS A MATTER OF CALIFORNIA
            LAW FOR HARM CAUSED BY *ANOTHER*
            MANUFACTURER'S PRODUCT. ..................................................... 6

            A.     Duty is a necessary element of plaintiffs' claims under
                  California law. ........................................................................... 8

            B.     This Court should disregard *Conte* as inconsistent with
                  California law and adhere to the California Supreme
                  Court's guidance........................................................................ 8

                 i.     This Court is not bound by *Conte*. ............................... 10

                 ii.    This Court should reject *Conte*'s expansive theory
                       of liability for pharmaceutical manufacturers as
                       inconsistent with California law..................................... 12

    III.   EVEN IF "INNOVATOR LIABILITY" WERE A VIABLE
            THEORY OF LIABILITY, PLAINTIFFS HAVE FAILED TO
            ESTABLISH THAT A CALIFORNIA COURT HAS
            PERSONAL JURISDICTION OVER NOVARTIS IN THIS
            CASE............................................................................................ 15

    IV.   PLAINTIFFS' FRAUD-BASED CLAIMS ADDITIONALLY
            FAIL FOR LACK OF ALLEGATIONS IN SUPPORT. ................... 18

CONCLUSION.......................................................................................... 23

NOVARTIS'S MPA ISO MOTION TO DISMISS

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Alan Neuman Prods., Inc. v. Albright*,
    862 F.2d 1388 (9th Cir. 1988) ................................................................. 19, 20

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ......................................................................................... 6

*Baggett v. Hewlett-Packard Co.*,
    582 F. Supp. 2d 1261 (C.D. Cal. 2007) ...................................................... 19

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................. 6, 18

*Benson v. Ocwen Loan Servicing, LLC*,
    562 F. App'x 567 (9th Cir. 2014) ................................................................. 7

*Brown v. Superior Court*
    751 P.2d 470 (1988) .................................................................................... 12

*Buckman Co. v. Plaintiffs' Legal Comm.*,
    531 U.S. 341 (2001) .................................................................................... 21

*Cadlo v. Owens-Illinois, Inc.*,
    23 Cal. Rptr. 3d 1 (Cal. Ct. App. 2014) ................................................. 19, 22

*Conte v. Wyeth, Inc.*,
    85 Cal. Rptr. 3d 299 (Cal. Ct. App. 2008) ..................................... *passim*

*Daly v. Gen. Motors Corp.*,
    575 P.2d 1162 (Cal. 1978) ............................................................................ 7

*In re Darvocet, Darvon, & Propoxyphene Prods. Liab. Litig.*
    756 F.3d 917 (6th Cir. 2014) ...................................................................... 14

*DeMarco v. DepoTech Corp.*,
    149 F. Supp. 2d 1212 (S.D. Cal. 2001) ...................................................... 21

*Dep't of Water & Power of City of Los Angeles v. ABB Power T & D Co.*,
    902 F. Supp. 1178 (C.D. Cal. 1995) ...................................................... 10, 11

*Erie R.R. Co. v. Tompkins*,
    304 U.S. 64 (1938) ...................................................................................... 8

*Errico v. Pac. Capital Bank, N.A.*,
    753 F. Supp. 2d 1034 (N.D. Cal. 2010)................................................... 18

*Frere v. Medtronic, Inc.*,
    No. EDCV1502338BRODTBX, 2016 WL 1533524 (C.D. Cal. Apr.
    6, 2016)..................................................................................................... 21

*Friedman v. Merck & Co.*,
    131 Cal. Rptr. 2d 885 (Cal. Ct. App. 2003) ............................................ 8

*Froyd v. Cook*,
    681 F. Supp. 669 (E.D. Cal. 1988) ........................................................ 11

*Galvan v. Yates*,
    No. CVF 05-0986 AWI LJO, 2006 WL 1495261 (E.D. Cal. May
    24, 2006).............................................................................................. 21, 22

*H.(T.) v. Novartis Pharmaceuticals Corp.*,
    371 P.3d 241 (Cal. 2016).............................................................. 2, 10, 23

*Hoffman v. 162 N. Wolfe LLC*,
    175 Cal. Rptr. 3d 820 (Cal. Ct. App. 2014) ............................................ 8

*Hosp. Bldg. Co. v. Trustees of Rex Hosp.*,
    425 U.S. 738 (1976) .................................................................................. 6

*In re Hydroxycut Mktg. & Sales Practices Litig.*,
    No. 09MD2087-BTM AJB, 2010 WL 2232151 (S.D. Cal. June 3, 2010).............. 19

*Jackson v. Fischer*,
    931 F. Supp. 2d 1049 (N.D. Cal. 2013)................................................... 8

*Jenkins v. McKeithen*,
    395 U.S. 411 (1969) .................................................................................. 6

*Jolly v. Eli Lilly & Co.*
    751 P. 2d 923 (1988) ............................................................................... 12

*Kelley v. Rambus, Inc.*,
    384 F. App'x 570 (9th Cir. 2010).......................................................... 22

*Lewis v. Tel. Employees Credit Union*,
   87 F.3d 1537 (9th Cir. 1996) ............................................................. 8, 9

*In re Marriage of Shaban*,
   105 Cal. Rptr. 2d 863 (Cal. Ct. App. 2001) ........................................ 11

*Monkton Ins. Servs., Ltd. v. Ritter*,
   768 F.3d 429 (5th Cir. 2014) ............................................................... 16

*Montgomery v. Buege*,
   No. CIV. 08-385 WBS KJM, 2009 WL 1034518 (E.D. Cal. Apr. 16, 2009)......... 21

*Moretti v. Wyeth, Inc.*,
   No. 2:08-CV-00396-JCM (GWF), 2009 WL 749532 (D. Nev. Mar. 20, 2009) .... 15

*Muniz v. United Parcel Serv., Inc.*,
   738 F.3d 214 (9th Cir. 2013) ............................................................... 11

*Neilson v. Union Bank of California, N.A.*,
   290 F. Supp. 2d 1101 (C.D. Cal. 2003)................................................ 18

*O'Neil v. Crane Co.*,
   266 P.3d 987 (Cal. 2012).................................................... 1, 13, 14, 15

*Phelps v. Wyeth, Inc.*,
   No. 09-6168-TC, 2010 WL 2553619 (D. Or. May 28, 2010)................... 15

*Picot v. Weston*,
   780 F.3d 1206 (9th Cir. 2015) ............................................................ 17

*PLIVA, Inc. v. Mensing*
   564 U.S. 604 (2011) ........................................................................ 3, 4

*Rosa v. Taser Int'l, Inc.*,
   684 F.3d 941 (9th Cir. 2012) ............................................................. 11

*Ruhrgas AG v. Marathon Oil Co.*,
   526 U.S. 574 (1999) ..................................................................... 15, 16

*Ryder v. Lightstorm Entm't, Inc.*,
   201 Cal. Rptr 3d. 110 (Cal. Ct. App. 2016), review denied (July 13, 2016) .......... 19

NOVARTIS'S MPA ISO MOTION TO DISMISS

*Schrock v. Wyeth, Inc.*,
    727 F.3d 1273 (10th Cir. 2013) .......................................................... 10

*Sherman v. Stryker Corp.*,
    No. SACV 09-224JVS(ANX), 2009 WL 2241664 (C.D. Cal. Mar.
    30, 2009) ............................................................................................ 22

*Sindell v. Abbott Laboratories*,
    607 P.2d 924 (1980) ........................................................................... 12

*Sukonik v. Wright Med. Tech., Inc.*,
    No. CV1408278BROMRWX, 2015 WL 10682986 (C.D. Cal. Jan.
    26, 2015) ....................................................................................... 20, 22

*Vess v. Ciba–Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) ...................................................... 18, 19

*Walden v. Fiore*,
    134 S. Ct. 1115 (2014) ................................................................. 16, 17

*Washington ex rel. Washington v. Medicis Pharm. Corp.*,
    No. 3:12CV126-DPJ-FKB, 2013 WL 496063 (S.D. Miss. Feb. 7,
    2013) ................................................................................................... 15

*Weaver v. Johnson & Johnson, Ethicon, Inc.*,
    No. 16CV00257GPCBGS, 2016 WL 1668749 (S.D. Cal. Apr. 27, 2016) ......... 17

*Wendell v. Johnson & Johnson*,
    No. 09-4124 CW JSC, 2013 WL 1741704 (N.D. Cal. Apr. 22, 2013) ........... 9, 11

*Wilhelm v. Pray, Price, Williams & Russell*,
    231 Cal. Rptr. 355 (Cal. Ct. App. 1986) ............................................ 19

**Other Authorities**

21 C.F.R. § 200.5 ......................................................................................... 20

21 C.F.R. § 201.57 ....................................................................................... 20

21 C.F.R. § 202.1 ......................................................................................... 20

21 C.F.R. § 314.80(b) .................................................................................... 4

21 C.F.R. § 314.81(b)(2)(i) ........................................................................... 4

21 C.F.R. § 314.98(a) ................................................................4

21 C.F.R. § 314.98(b) ...............................................................4

57 Fed. Reg. 17950, 17961 (Apr. 28, 1992)................................4

"The Epilepsies and Seizure: Hope Through Research," National
    Institute of Health, National Institute of Neurological Disorders and
    Stroke, *available at* http://www.ninds.nih.gov/disorders/epilepsy/
    detail_epilepsy.htm#3109_18 ...........................................4, 5

Federal Rule of Civil Procedure 9(b) .........................2, 18, 23

Federal Rule of Civil Procedure 8(a)(2) ...........................6

Federal Rule of Civil Procedure 10(c)................................21

Federal Rule of Civil Procedure 12(b)(2)..........................23

Federal Rule of Civil Procedure 12(b)(6) ......................6, 23

Novartis, Tegretol® FDA Approved labeling dated 02/15/2013,
    *available at* http://www.accessdata.fda.gov/drugsatfda_docs/label/
    2013/016608s105,018281s053,018927s046,020234s038lbl.pdf ......................5

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**INTRODUCTION**

Plaintiffs Jennifer Quinn-White and Kerry White ("plaintiffs") bring this product liability action against Novartis Pharmaceuticals Corporation ("Novartis") for alleged injuries caused by *another* manufacturer's drug product.  Plaintiffs allege that Mrs. White developed a severe skin reaction after ingesting Epitol®, an anti-epileptic drug manufactured by Teva Pharmaceuticals U.S.A., Inc. ("Teva").  Compl. ¶¶ 10-12.  Mrs. White claims no injuries from use of a Novartis drug product.  Regardless of how they are pled, plaintiffs' claims against Novartis cannot stand.

Plaintiffs ask this Court to exceed traditional tort boundaries and create an "innovator" duty for Novartis where none exists, relying upon an outlying California appellate court decision, *Conte v. Wyeth, Inc.*, 85 Cal. Rptr. 3d 299 (Cal. Ct. App. 2008), for the proposition that Novartis, as the manufacturer of a "brand-name" drug (Tegretol®) approved to treat epileptic seizures by the U.S. Food and Drug Administration ("FDA"), owed a duty of care to Mrs. White, a consumer of a competing manufacturer's generic drug product (Epitol®).  *See* Compl. ¶ 3 n.1.  Such an expansive theory of liability would wreak havoc upon the workings of a complex federal regulatory scheme designed to bring affordable generic drug products to the market.

The lower court's opinion in *Conte*, however, is not binding on this Court and misrepresents California law.  *Conte* disregarded the California Supreme Court's consistent policy considerations and its rationale was soundly rejected by the Supreme Court of California in *O'Neil v. Crane Co.*, 266 P.3d 987 (Cal. 2012).  *O'Neil* holds "that a product manufacturer *may not be held liable in strict liability or negligence for harm caused by another manufacturer's product*."  *Id.* at 342 (emphasis added).  Accordingly, this Court should disregard *Conte*'s novel "innovator liability" theory as an improper prediction of California law and dismiss

plaintiffs' claims for lack of duty as a matter of law.[1]

Plaintiffs' claims additionally fail for the following reasons:  Without sufficient allegations that Novartis is "at home" in California or engaged in suit-related conduct in California, plaintiffs have failed to establish that this Court sitting in California has general or specific personal jurisdiction over Novartis, a New Jersey corporation. Plaintiffs also fail to plead their fraud-based claims with sufficient particularity pursuant to Fed. R. Civ. P. 9(b).

Because plaintiffs have failed to state a claim upon which relief can be granted, their Complaint should be dismissed in its entirety.

## FACTUAL BACKGROUND

Plaintiffs Jennifer Quinn-White and her husband Kerry White allege that Mrs. White, who had a history of epileptic seizure disorder treated by a variety of anti-epileptic medications, developed a skin reaction known as Stevens-Johnson syndrome ("SJS") and toxic epidermal neurolysis ("TEN") on July 1, 2014, following her use of the medicine carbamezapine sold under the trade name of Epitol®.  Compl. ¶¶ 1, 8-12.

Plaintiffs sued only Novartis, even though they do not allege that Mrs. White ever took any medication manufactured or marketed by Novartis.  Rather, plaintiffs assert that "Mrs. White . . . was prescribed Tegretol. . . and the pharmacy unilaterally substituted a generic version of Tegretol called Epitol."  *Id*. ¶ 10.  Epitol® is "manufactured and marketed by Teva Phamaceuticals [sic] U.S.A., Inc.."  *Id*. ¶ 11.

---

[1] The California Supreme Court recently granted review in *H.(T.) v. Novartis Pharmaceuticals Corp*., 371 P.3d 241 (Cal. 2016), to definitively address whether a branded prescription drug manufacturer can be liable for injuries caused by another manufacturer's generic drug.  As set forth in Novartis's contemporaneously-filed Motion to Stay, Novartis alternatively requests that the Court instead exercise its discretion to stay this matter until the California Supreme Court has spoken on this dispositive issue of law.

1   Plaintiffs further allege that "Novartis has been the NDA-holder for Tegretol," a

2   competing, branded form of carbamezapine, and as such, has been responsible for

3   Tegretol®'s "marketing and labeling".  *Id.* ¶ 11.

4        Plaintiffs assert three causes of action against Novartis—negligence (*id.* ¶¶ 73-

5   83), negligent misrepresentation (*id.* ¶¶ 84-93) and "fraud and fraud by concealment"

6   (*id.* ¶¶ 94-103)—based on Novartis's alleged conduct with regard to Tegretol®, even

7   though Mrs. White never received or took Novartis's product.  Plaintiffs admittedly

8   are bringing this suit against Novartis solely under a theory of "innovator liability,"

9   Compl. ¶ 3 n.1, seeking relief in the form of compensatory damages, loss of

10  consortium, restitutionary relief, and past and future special damages.  *Id.* at p. 26.

11       If allowed to proceed, plaintiffs' "innovatory liability" theory would seek to

12  impose a new and infinite duty upon Novartis for a product it did not make,

13  notwithstanding the havoc such an expanded tort theory could wreak upon the

14  workings of the complex federal regulatory scheme and the consumers it protects.

15  Plaintiffs acknowledge that there is a comprehensive regulatory regime that governs

16  Novartis's Tegretol® warnings, *see, e.g.*, Compl. ¶ 62 ("Under the Code of Federal

17  Regulations, Novartis, as an NDA [New Drug Application] holder, has a duty to

18  ensure its Tegretol® warnings . . . are accurate, adequate, and not false or

19  misleading in any particular."), and they detail Novartis's diligence in continually

20  revising the Tegretol® label to reflect emerging safety information, as required by

21  these regulations, *id.* ¶¶ 30-36.

22       Plaintiffs, however, ignore the regulatory obligations of generic drug

23  manufacturers like the manufacturers of Epitol®.  Generic drug manufacturers must

24  use the same labeling as that used by the NDA holder for the branded drug, Compl.

25  ¶ 11[2]; but they are required to separately monitor the safety of their drugs.  Under

---

27  [2] FDA permits generic manufacturers to enter the market to sell competing generic

1  federal law, generic manufacturers must "develop written procedures for the

2  surveillance, receipt, evaluation, and reporting of postmarketing adverse drug

3  experiences to FDA."  21 C.F.R. §§ 314.80(b), 314.98(a) (making § 314.80

4  applicable to generic manufacturers.)  Generic manufacturers also must submit to

5  the FDA an annual report summarizing "significant new information from the

6  previous year that might affect the safety, effectiveness, or labeling of the drug

7  product," including a "description of actions the [manufacturer] has taken or

8  intends to take as a result of this new information."  21 C.F.R. §§ 314.81(b)(2)(i),

9  314.98(b).  The FDA has instructed that if a generic drug manufacturer "believes

10  new safety information should be added to a product's labeling, it should contact

11  FDA, and FDA will determine whether the labeling for the generic and [branded]

12  drugs should be revised."  57 Fed. Reg. 17950, 17961 (Apr. 28, 1992).

13      The Complaint also is devoid of any alleged facts supporting a plausible

14  theory of liability against Novartis for negligence, misrepresentation, or fraud.  First

15  approved by the FDA in 1974, Tegretol® is a widely prescribed carbamazepine drug

16  used to prevent and control epileptic seizures.  *See* Compl. ¶ 23.  Epilepsy is a

17  neurological condition that effects approximately 2.3 million adults in the United

18  States.[3]  The seizures that afflict patients with epilepsy pose serious, life-threatening

19

20  _____

21  drugs that are "bio-equivalent" to the branded drug.  In 1984, Congress passed the

22  Hatch-Waxman Act that "allows manufacturers to develop generic drugs

23  inexpensively, without duplicating the clinical trials already performed on the

   equivalent brand-name drug," and their costs are further lowered because the FDCA

24  mandates that they use the "same . . . label[ing] approved [by the FDA] for the brand-

25  name drug."  *PLIVA, Inc. v. Mensing* 564 U.S. 604, 612-613 (2011).

26  [3] *See, e.g.,* "The Epilepsies and Seizure: Hope Through Research," National

27  Institute of Health, National Institute of Neurological Disorders and Stroke,
   *available at* http://www.ninds.nih.gov/disorders/epilepsy/detail_epilepsy.htm#3109_18.

28

risks.[4]

Although plaintiffs' 27-page complaint is packed with vague and conclusory allegations regarding the 40-plus-year regulatory history of Tegretol®[5], *see e.g.* Compl ¶¶ 19-60, plaintiffs themselves concede that the 2013 Tegretol® label in place over a year before Mrs. White took Epitol® included explicit warnings concerning Mrs. White's alleged injury—SJS and TEN.  *See, e.g.*, Compl. ¶¶ 36-37. Indeed, the following boxed warning appeared at the very top of the label:

---

**WARNINGS**

SERIOUS DERMATOLOGIC REACTIONS AND HLA-B*1502 ALLELE

SERIOUS AND SOMETIMES FATAL DERMATOLOGIC REACTIONS, INCLUDING TOXIC EPIDERMAL NECROLYSIS (TEN) AND STEVENS-JOHNSON SYNDROME (SJS), HAVE BEEN REPORTED DURING TREATMENT WITH TEGRETOL. THESE REACTIONS ARE ESTIMATED TO OCCUR IN 1 TO 6 PER 10,000 NEW USERS IN COUNTRIES WITH MAINLY CAUCASIAN POPULATIONS, BUT THE RISK IN SOME ASIAN COUNTRIES IS ESTIMATED TO BE ABOUT 10 TIMES HIGHER. STUDIES IN PATIENTS OF CHINESE ANCESTRY HAVE FOUND A STRONG ASSOCIATION BETWEEN THE RISK OF DEVELOPING SJS/TEN AND THE PRESENCE OF HLA-B*1502, AN INHERITED ALLELIC VARIANT OF THE HLA-B GENE. HLA-B*1502 IS FOUND ALMOST EXCLUSIVELY IN PATIENTS WITH ANCESTRY ACROSS BROAD AREAS OF ASIA. PATIENTS WITH ANCESTRY IN GENETICALLY AT-RISK POPULATIONS SHOULD BE SCREENED FOR THE PRESENCE OF HLA-B*1502 PRIOR TO INITIATING TREATMENT WITH TEGRETOL. PATIENTS TESTING POSITIVE FOR THE ALLELE SHOULD NOT BE TREATED WITH TEGRETOL UNLESS THE BENEFIT CLEARLY OUTWEIGHS THE RISK (SEE **WARNINGS** AND **PRECAUTIONS**, **LABORATORY TESTS**).

---

*See* Novartis, Tegretol® FDA Approved labeling dated 02/15/2013, *available at* http://www.accessdata.fda.gov/drugsatfda_docs/label/2013/016608s105,018281s053,018927s046,020234s038lbl.pdf.  Novartis can only surmise from the Complaint

---

[4] *See, e.g., id.*

[5] Plaintiffs also inexplicably include allegations of the regulatory history of Novartis's separate FDA-approved drug, Trileptal®, that has the active ingredient oxycarbamazepine.  Compl. ¶¶ 23-29.

NOVARTIS'S MPA ISO MOTION TO DISMISS

which alleged actions or inactions regarding Tegretol® plaintiffs contend are actionable causes of Mrs. White's purported injuries from Epitol®.

## ARGUMENT

## I.   STANDARD ON RULE 12(b)(6) MOTION TO DISMISS.

Federal courts sitting in diversity jurisdiction apply state substantive law and federal procedural law.  *Zamani v.* Carnes, 491 F.3d 990, 995 (9th Cir. 2007). Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The court must accept as true the allegations of the complaint, *see Hosp. Bldg. Co. v. Trustees of Rex Hosp.*, 425 U.S. 738, 740 (1976), and construe the pleading in the light most favorable to plaintiff.  *See Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969).  The plausibility standard is met only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 556).  It requires "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*

## II.  PLAINTIFFS' CLAIMS FAIL BECASE NOVARTIS OWED PLAINTIFFS NO DUTY AS A MATTER OF CALIFORNIA LAW FOR HARM CAUSED BY *ANOTHER* MANUFACTURER'S PRODUCT.

Plaintiffs state their claims against Novartis under the substantive law of California.  Although plaintiffs' claims sound in traditional product liability failure-

1    to-warn, plaintiffs could not pursue strict liability claims against Novartis because

2    Mrs. White admittedly did not use Novartis's product Tegretol®.  California law has

3    long recognized that product identification is a fundamental aspect of strict liability.

4    *See Daly v. Gen. Motors Corp.*, 575 P.2d 1162, 1166 (Cal. 1978) (explaining that

5    strict liability was judicially created to "insure that the costs of injuries resulting

6    from defective products are borne by the manufacturer that *put such products on the*

7    *market* rather than by the injured persons who are powerless to protect

8    themselves.") (internal citation omitted) (emphasis added); *accord, Conte*, 85 Cal.

9    Rptr. 3d at 311 ("defendant would not be liable in strict products liability because it

10   did not manufacture or sell the product").  Instead, plaintiffs recast their failure-to-

11   warn claims "against Novartis under 'innovator liability' causes of action" in

12   negligence, misrepresentation and fraud or fraud by concealment. Compl. ¶ 3 n.1.

13           Plaintiffs ask this Court to hold that Novartis, as manufacturer of a brand

14   name prescription drug (Tegretol®) owes a duty of care to plaintiffs as consumers

15   allegedly injured by another manufacturer's generic drug (Epitol®).  Plaintiffs rely

16   solely on the opinion of the First Appellate District Court in *Conte* (Compl. ¶ 3,

17   n.1), for their novel "innovator liability" theory that a branded drug manufacturer

18   owes a duty of care to consumers of a drug it never manufactured.  As set forth

19   below, however, *Conte* is an outlier from a lower court that has been

20   overwhelmingly rejected by courts across the country and conflicts with established

21   California law.  This Court should adhere to established tort boundaries, reject

22   *Conte*, and dismiss plaintiffs' claims because Novartis owed no duty to plaintiffs as

23   a matter of California law.[6]

---

25   [6] *See Benson v. Ocwen Loan Servicing, LLC*, 562 F. App'x 567, 569 (9th Cir. 2014)

26   (upholding district court's dismissal of plaintiff's negligence claim for failure to
     state a claim under California law because defendant did not owe plaintiff a duty of

27   care).

**A. Duty is a necessary element of plaintiffs' claims under California law.**

All of plaintiff's claims, whether brought under negligence, negligent misrepresentation, or "fraud and fraud by concealment" theories, hinge on whether Novartis owed plaintiff a duty under California law.[7]  Plaintiffs' conclusory allegations about Novartis's legal duties reflect their admission that a legal duty is a necessary element of their claims.  *See, e.g.* Compl. ¶ 76 ("Novartis owed a *duty* toward foreseeable users of Tegretol and its generic forms such as Epitol . . . to ensure that the Tegretol labeling and prescribing information adequately informed prescribing physicians regarding the potential effects . . ." (Negligence Count); ¶ 85 ("Novartis owed a *duty* to disseminate accurate and adequate information concerning Tegretol . . .") (Negligent Misrepresentation Count); ¶ 98 ("Novartis had a *duty* to disclose the foregoing risks and failed to do so . . .") (Fraud and Fraud by Concealment Count).

**B. This Court should disregard *Conte* as inconsistent with California law and adhere to the California Supreme Court's guidance.**

This Court is bound by *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78 (1938) to follow the substantive law of California, and specifically, "[w]hen interpreting state

---

[7] "[D]uty is the threshold element of a negligence cause of action." *Friedman v. Merck & Co.*, 131 Cal. Rptr. 2d 885, 890 (Cal. Ct. App. 2003) (internal citations omitted).  Similarly, "[t]he existence of a duty of care is necessary to support a negligent misrepresentation claim." *Jackson v. Fischer*, 931 F. Supp. 2d 1049, 1068 (N.D. Cal. 2013) (citing *Alfus v. Pyramid Tech. Corp.,* 745 F. Supp. 1511, 1523 (N.D. Cal. 1990) (liability for negligent misrepresentation may attach "only where plaintiff establishes that defendants breached a duty owed to him")).  And, "[a] fraud claim based upon the suppression or concealment of a material fact must involve a defendant who had a legal *duty* to disclose the fact." *Hoffman v. 162 N. Wolfe LLC*, 175 Cal. Rptr. 3d 820, 826 (Cal. Ct. App. 2014) (emphasis added).

1  law, federal courts are bound by *decisions of the state's highest court.*"  *Lewis v.*

2  *Tel. Employees Credit Union*, 87 F.3d 1537, 1545 (9th Cir. 1996) (internal

3  quotations and citations omitted) (emphasis added). In the absence of California

4  Supreme Court guidance, the Court "must predict how the highest state court would

5  decide the issue using intermediate appellate court decisions, decisions from other

6  jurisdictions, statutes, treatises, and restatements as guidance." *Id*.

7         Plaintiffs do not, and cannot, cite to any guidance from the California

8  Supreme Court in support of their "innovator liability" claims.  Instead, plaintiffs

9  rely on a 2008 lower court decision in *Conte* that decided an issue of first

10  impression in California.  *See* Compl. ¶ 3 n.1.  *Conte*, however, does not accurately

11  state California law.  *Conte*'s flawed legal reasoning ignored the boundaries of

12  traditional California tort law by imposing a limitless duty of care upon a branded

13  prescription drug manufacturer for customers alleging injury from the use of a

14  generic or bio-equivalent drug.  *See Conte*, 85 Cal. Rptr. 3d at 310.  *Conte* held that

15  plaintiff could pursue a negligent misrepresentation claim[8] where a product liability

16  claim would fail for lack of product identification and looked "primarily to the

17  foreseeability of physical harm" to determine the duty owed by a brand

18  manufacturer.  *Id*. at 313 (holding that a brand manufacturer has an extended duty

19  of care because it "should reasonably perceive that there could be injurious reliance

20  on its product information" by patients who ingest a generic form of the drug).  *Id*.

21  As a result, the *Conte* court concluded that the "duty of care in disseminating

22

23  _____

24  [8] The viability of plaintiffs' negligence claims gain no support in *Conte*, which
addressed only claims of negligent misrepresentation.  *See Wendell v. Johnson &*

25  *Johnson*, No. 09-4124 CW JSC, 2013 WL 1741704, at *3 (N.D. Cal. Apr. 22,
2013) ("Given that the *Conte* court's duty holding was rooted in the specific

26  context of misrepresentation torts, the Court is not persuaded that *Conte*'s holding .
. . covers Plaintiffs' negligence claim.").

27

28

1    product information" should extend to those patients who are injured by generic

2    drugs.  *Id.* at 318.

3        In the eight years since *Conte* was decided it has remained an outlier in

4    California.  The California Supreme Court recently granted review of the only other

5    California appellate court decision that has adhered to *Conte*, signaling that the that

6    the Court intends to clarify California law.[9]  The overwhelming majority of courts

7    to consider this issue have rejected *Conte*.  This Court should likewise reject *Conte,*

8    or in the alternative, stay this case until the California Supreme Court has clarified

9    California law.

10                  **i.    This Court is not bound by *Conte*.**

11       The appellate court in *Conte* attempted to implement a broad expansion of

12   tort law in California.  A federal court should be "generally reticent to expand state

13   law without clear guidance from its highest court." *Schrock v. Wyeth, Inc.,* 727 F.3d

14   1273, 1284 (10th Cir. 2013) (internal citations omitted).  Although the California

15   Supreme Court has yet to  directly overrule *Conte*, the Court's stated legal

16   reasoning and policy considerations in other contexts are inconsistent with *Conte*,

17   as discussed *infra*.

18       Lower state court decisions, like the Court of Appeal's decision in *Conte*,

19   may provide guidance but this Court is not bound to follow such decisions in

20

21   _____

22   [9] As set forth in Novartis's contemporaneously filed Motion to Stay , the California

23   Supreme Court's recently granted Novartis's petition for review in another case,

     *H. (T.) v. Novartis Pharm. Corp*., 371 P.3d 241 (Cal. 2016), putting the following

24   issue directly before the state's highest court:  "May the brand name manufacturer

25   of a pharmaceutical drug that divested all ownership interest in the drug be held

     liable for injuries caused years later *by another manufacturer's generic version of*

26   *that drug*?"  *Id.* (emphasis added).  The lower court decision has since been de-

27   published and is not binding upon this Court.

28

1   determining the law of the forum state, particularly where such decisions have

2   found little support.  *See Dep't of Water & Power of City of Los Angeles v. ABB*

3   *Power T & D Co.*, 902 F. Supp. 1178, 1189-90 (C.D. Cal. 1995) (predicting that the

4   California Supreme Court would not follow Court of Appeal decision and instead

5   applied the rule adopted by "the majority of the state courts").

6       Plaintiffs' action against Novartis hinges on the novel "innovator liability"

7   theory expounded by a single first district appellate court in *Conte*.  *See* Compl. ¶ 3

8   n.1.  However, "the binding character of California Courts of Appeal decisions,"

9   like *Conte*, "is relatively weak."  *Froyd v. Cook*, 681 F. Supp. 669, 673 n. 9 (E.D.

10  Cal. 1988).  Because there is no "horizontal stare decisis" within the Courts of

11  Appeal, the various district courts of appeal are not bound by the opinions of their

12  sister courts.  *In re Marriage of Shaban*, 105 Cal. Rptr. 2d 863, 870-71 (Cal. Ct.

13  App. 2001); *see also Muniz v. United Parcel Serv., Inc*., 738 F.3d 214, 219 (9th Cir.

14  2013) ("Decisions of the six [California] district appellate courts are persuasive but

15  do not bind each other or us.").

16      Accordingly, "a federal district court need give no greater weight to

17  intermediate appellate decisions than the superior court of the state does."  *Froyd*,

18  681 F. Supp. at 673 n. 9 (internal citation omitted).[10]  This Court should instead find

19

20  ───────────────

21  [10] Plaintiffs also refer to two federal court decisions from the Ninth Circuit, Compl.
    ¶ 3 n.1, but neither decision is binding upon this Court.   In both instances, the

22  Ninth Circuit and the United States District Court for the Northern District of
    California discussed *Conte* in dicta, without predicting or interpreting *Conte* as

23  California law.  *See Rosa v. Taser Int'l, Inc.*, 684 F.3d 941, 949 (9th Cir. 2012)
    (discussing *Conte*, in dicta, as an example of when "California's negligence law

24  *may* impose on a manufacturer a duty to warn" consumers of other product who
    foreseeably relied on its warnings) (emphasis added); *Wendell*, 2013 WL 1741704,

25  at *3 (declining to find that the Ninth Circuit in *Rosa* interpreted *Conte* to apply to

26  all negligence claims because the Court's "description of *Conte* was in dicta as it
    ultimately held that *Conte* did not apply the facts of the case before it.").

27

28

1    that the California Supreme Court, in line with the vast majority of courts across the

2    nation, will reject *Conte*.

3          ii.      **This Court should reject *Conte*'s expansive theory of liability**

4                   **for pharmaceutical manufacturers as inconsistent with**

5                   **California law.**

6          *Conte* ignored that the California Supreme Court has long recognized

7    the important public policy in placing limitations on liability for prescription drug

8    makers.   In *Brown v. Superior Court* 751 P.2d 470, 479 (1988), the Court noted

9    that public policy "favors the development and marketing of beneficial new drugs,

10   even though some risks, perhaps serious ones, might accompany their introduction,

11   because drugs can save lives and reduce pain and suffering." *Id*. The Court warned

12   that drug manufacturers might be reluctant to develop new drugs if subjected to

13   expanded theories of liability and noted that the "the broader public interest in the

14   availability of drugs at an affordable price must be considered in deciding the

15   appropriate standard of liability for injuries resulting from their use." *Id.* at 478-

16   479.  Likewise, in *Sindell v. Abbott Laboratories*, 607 P.2d 924 (1980), the Court

17   adopted a "market share" liability theory whereby each prescription drug

18   manufacturer theoretically could be proportionately responsible "for the injuries

19   caused *by its own products*," but the Court drew a clear line in the sand against any

20   theory that would hold a manufacturer liable for injuries caused by *another*

21   manufacturer's drug.   *Id*. at 937 (emphasis added.).   The Court rejected a theory

22   that "would render virtually any manufacturer liable for the defective products of an

23   entire industry, even if it could be demonstrated that the product which caused the

24   injury was not made by the defendant." *Id.* at 933*; see also Jolly v. Eli Lilly & Co.*

25   751 P. 2d 923, 931 (1988) (rejecting a plaintiff's theory under which "all drug

26   companies would be liable even if plaintiff knew the actual manufacturer of the

27   drug" because "that clearly is not the law").

28

Consistent with this line of policy determinations, the California Supreme Court recently rejected the legal reasoning and policy arguments underlying *Conte* in *O'Neil*, 266 P.3d at 998 (refusing to impose duty on manufacturer of valves and pipes containing packing and gaskets for alleged injuries caused by another manufacturer's replacement packing and gaskets). *O'Neil* squarely holds that a defendant owes "[n]o duty of care to prevent injuries from another manufacturer's product." *Id.* at 1006. Accordingly, absent a showing that "the defendant's own product contributed substantially to the harm" or that "the defendant participated substantially in creating a harmful combined use of products" – neither of which is alleged here – "a product manufacturer may not be held liable in strict liability or negligence for harm caused by another manufacturer's product." *Id.* at 991.

*Conte* is predicated in the first instance on a purported distinction between strict liability and negligent misrepresentation, which the *Conte* court used to distinguish prior California decisions that had precluded liability claims against non-manufacturing defendants. *See Conte*, 85 Cal. Rptr. 3d at 310 (holding that this "is a case involving legal principles of negligent misrepresentation and not a products liability action" and that, "[f]or this reason, Wyeth's reliance on numerous strict product liability cases for the rule that a plaintiff in a products liability case must prove the defendant made or sold the allegedly defective product that causes injury sheds no light on the issue presented for our consideration"). *O'Neil*, however, held that the distinction between strict liability and negligent misrepresentation does not support different treatment of non-manufacturing defendants. Contrary to *Conte*, the California Supreme Court concluded that "the same policy considerations that militate against imposing strict liability in this situation apply with equal force in the context of negligence." *O'Neil*, 266 P.3d at 1007.

*Conte* also focused on foreseeability as the lodestar for determining whether

1   a defendant owes a duty of care that could support a finding of negligence.  *See*

2   *Conte*, 85 Cal. Rptr. 3d at 313 ("in this case our duty analysis must look primarily

3   to the foreseeability of physical harm").  But *O'Neil* squarely rejected the argument

4   that "foreseeability is the critical inquiry in evaluating whether a duty of care is

5   owed."  *O'Neil*, 266 P.3d at 1006.  Instead, the California Supreme Court held that

6   "when the consequences of a negligent act must be limited to avoid an intolerable

7   burden on society" – as the Court concluded was the case for claims brought

8   against non-manufacturers – "policy considerations may dictate a cause of action

9   should not be sanctioned no matter how foreseeable the risk."  *Id.*  Thus, in sharp

10  contrast to *Conte, O'Neil* holds that "foreseeability is not synonymous with duty;

11  nor is it a substitute."  *Id.*; *see also id.* at 1002 ("Foreseeability does not create a

12  duty but sets limits once a duty is established.") (citation omitted).

13      *Conte* simply cannot bear the weight of *O'Neil's* public policy concerns:  "In

14  short, expansion of the duty of care as urged here would impose an obligation to

15  compensate on those whose products caused the plaintiff no harm.  To do so would

16  exceed the boundaries established over decades of product liability law.  Social

17  policy must at some point intervene to delineate liability even for foreseeable

18  injury."  *Id.* at 1007 (internal quotation marks omitted). In so holding, the

19  California Supreme Court directly rejected the foundation underlying *Conte*.  The

20  Court explained, "foreseeability alone is not sufficient to create an independent tort

21  duty" and that "strong policy considerations counsel against imposing a duty" on a

22  non-manufacturer defendant.  *Id.* at 1006-1007.

23      As *Conte* acknowledged, its ruling that brand name drug manufacturers can

24  be held liable for injuries caused by another manufacturer's generic drug was an

25  outlier when it was decided.  *Conte*, 85 Cal. Rptr. 3d at 317 ("We are aware that …

26  we depart from the majority of courts to have wrestled with this particular issue.").

27  *Conte* remains an outlier today.  *See, e.g., In re Darvocet, Darvon, & Propoxyphene*

28

*Prods. Liab. Litig.* 756 F.3d 917, 938-939 (6th Cir. 2014) (noting that the *Conte* argument has been rejected in "at least fifty-five decisions from twenty-two states"); *Washington ex rel. Washington v. Medicis Pharm. Corp.*, No. 3:12CV126-DPJ-FKB, 2013 WL 496063, *4 (S.D. Miss. Feb. 7, 2013) ("*Conte* broke from this [majority] rule . . . [a]nd, since that departure, *Conte* has gained little traction."); *Phelps v. Wyeth, Inc.*, No. 09-6168-TC, 2010 WL 2553619, at *2 (D. Or. May 28, 2010) ("I cannot find that a decision to hold a manufacturer liable for injury caused by its competitor's product is rooted in common sense"); *Moretti v. Wyeth, Inc*., No. 2:08-CV-00396-JCM (GWF), 2009 WL 749532, at *4  (D. Nev. Mar. 20, 2009) ("Simply put, *Conte* stands alone.").

Following *O'Neil*, this outlier position cannot be maintained.  *Conte* was never good law in California and the California Supreme Court has now granted review in a case that will squarely address the validity of *Conte*.[11]  This Court should disregard *Conte* to find that Novartis owed no duty to plaintiffs as a matter of California law.

**III.  EVEN IF "INNOVATOR LIABILITY" WERE A VIABLE THEORY OF LIABILITY, PLAINTIFFS HAVE FAILED TO ESTABLISH THAT A CALIFORNIA COURT HAS PERSONAL JURISDICTION OVER NOVARTIS IN THIS CASE.**

Plaintiffs' assertion that *Conte* imposes a duty to warn upon Novartis to users of other manufacturers' generic drugs additionally creates a jurisdictional problem. Novartis is not a California corporation and plaintiffs have failed to satisfy their burden that a California court has personal jurisdiction over Novartis in this case because plaintiffs' alleged injury is tethered to California only through Mrs. White's use of another manuacturer's product.

Personal jurisdiction "is an essential element" of a court's jurisdiction,

---

[11] *See* Novartis's contemporaneously filed Motion to Stay.

1   "without which the court is powerless to proceed to an adjudication." *Ruhrgas AG*

2   *v. Marathon Oil Co.*, 526 U.S. 574, 575 (1999) (quotation marks omitted).

3   Plaintiffs have failed to establish in their Complaint that this Court has personal

4   jurisdiction over Novartis, a New Jersey-headquartered company.  *See* Compl. ¶ 6.

5   In an apparent effort to assert "general personal jurisdiction," plaintiffs allege that

6   Novartis has "continuously and systemically engaged in business" in California.

7   *Id.*  However, in *Daimler AG v. Bauman*, the Supreme Court rejected that

8   formulation of general personal jurisdiction and explained that the proper analysis

9   is "whether that corporation's 'affiliations with the State are so "continuous and

10  systematic" as to render [the corporation] essentially at home in the forum State.'"

11  134 S. Ct. 746, 761 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v.*

12  *Brown*, 131 S. Ct. 2846, 2851 (2011)).

13      Accordingly, it is now "*incredibly difficult* to establish general jurisdiction

14  [over a defendant] in a forum other than the [defendant's] place of incorporation or

15  principal place of business." *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432

16  (5th Cir. 2014) (citing *Daimler*, 134 S. Ct. at 760) (emphasis added).  Plaintiffs

17  plainly have not satisfied the heavy burden of establishing that Novartis's

18  connections with California are so substantial that this is one of the "exceptional"

19  cases where Novartis is deemed to be "at home" (within the meaning of *Daimler*) in

20  a state where it is not incorporated and does not have its principal place of business.

21  *Daimler*, 134 S. Ct. at 761 n.19.

22      Plaintiffs' Complaint likewise fails to establish that a California court can

23  assert "specific personal jurisdiction" over Novartis in this case.  To determine

24  whether a court has specific personal jurisdiction over a nonresident defendant, the

25  Due Process Clause requires a "minimum contacts" analysis focusing on "the

26  relationship among the defendant, the forum, and the litigation" because "*the*

27  *defendant's suit-related conduct must create a substantial connection with the*

28

*forum State*."  *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014) (emphasis added; quotation marks omitted).  The relationship "must arise out of contacts that the 'defendant himself' creates with the forum State," so the "defendant-focused 'minimum contacts' inquiry" is not satisfied by "demonstrating contacts between the plaintiff (or third parties) and the forum State."  *Id*. at 1122 (quotation marks omitted).

In this case, Novartis's alleged "suit-related conduct" did not occur in, and was not connected to, California.  Novartis derived no revenue in California from the sale of its product Tegretol[®] to plaintiffs.  Because the " key factor to determining whether the court should exercise specific jurisdiction is the connection between Defendant's conduct and the harm alleged in this case," *Weaver v. Johnson & Johnson, Ethicon, Inc*., No. 16CV00257GPCBGS, 2016 WL 1668749, at *5 (S.D. Cal. Apr. 27, 2016), plaintiffs must allege that their injuries resulted from Novartis's in-forum contacts.  Instead, Novartis's alleged negligence and fraud occurred – if it did occur – in New Jersey (the location of Novartis's headquarters, where Novartis made the alleged misrepresentations and concealments regarding Tegretol[®]'s safety).  *See* Compl. ¶¶ 30-39.

Mrs. White's use of Epitol[®] in California is insufficient to connect Novartis to this forum because Mrs. White did not take *Novartis's* drug in California.  And although Mrs. White's alleged injury occurred while living in California, that falls well short of giving this Court specific personal jurisdiction over Novartis because "mere injury to a forum resident is not a sufficient connection to the forum," *Walden*, 134 S. Ct. at 1125; *see Picot v. Weston*, 780 F.3d 1206, 1215 (9th Cir. 2015) (applying *Walden* to affirm California court's dismissal for lack of specific personal jurisdiction; stating that plaintiff's injury "is not tethered to California in any meaningful way" but, rather, is "entirely personal to him and would follow him wherever he might choose to live or travel"). To find otherwise would imply that

1    any pharmaceutical company could be sued by any consumer in California,

2    regardless of the product that allegedly caused injury. This does not comport with

3    "traditional notions of fair play and substantial justice" as required by the

4    Constitution. *Daimler,* 134 S.Ct. at 754 (citations omitted).

5           In sum, plaintiffs have failed to satisfy their burden of establishing that a

6    California court is permitted to assert personal jurisdiction over Novartis in this

7    case and, therefore, the Court should dismiss all claims asserted against Novartis.

8

9    **IV.  PLAINTIFFS' FRAUD-BASED CLAIMS ADDITIONALLY FAIL FOR**

10   **LACK OF ALLEGATIONS IN SUPPORT.**

11          Fraud claims are subject to a heightened pleading standard under Federal

12   Rule of Civil Procedure 9(b). "In alleging fraud or mistake, a party must state with

13   particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

14   Conclusory allegations are insufficient. *Neilson v. Union Bank of California, N.A.*,

15   290 F. Supp. 2d 1101, 1141 (C.D. Cal. 2003). Negligent misrepresentation is a

16   form of deceit, also subject to the pleading requirements of Rule 9(b). *See, e.g.,*

17   *Errico v. Pac. Capital Bank, N.A.,* 753 F. Supp. 2d 1034, 1049 (N.D. Cal. 2010)

18   (negligent misrepresentation sounds in fraud and is subject to Rule 9(b) pleading

19   requirements).[12]

20          Plaintiffs have failed to adequately plead fraud, fraud by concealment, and

21   negligent misrepresentation, and those claims must be dismissed. This Court

22

23   _____

24   [12] Plaintiffs' conclusory allegations regarding Novartis's purported
     misrepresentations additionally fail to meet federal pleading standards under
25   *Twombly. See Twombly*, 550 U.S. at 556 (the plausibility standard is met only
     "when the plaintiff pleads factual content that allows the court to draw the
26   reasonable inference that the defendant is liable for the misconduct alleged").
27

28

1   should dismiss plaintiffs' fraud-based claims because their allegations fail to satisfy

2   Rule 9(b)'s heightened pleading requirements.  *Vess v. Ciba–Geigy Corp. USA,* 317

3   F.3d 1097, 1107 (9th Cir. 2003).

4         For example, to prove fraud by concealment under California law, plaintiffs

5   must present evidence of (1) a misrepresentation (false representation, concealment,

6   or nondisclosure); (2) knowledge of falsity (scienter); (3) intent to defraud (i.e., to

7   induce reliance); (4) justifiable reliance; and (5) resulting damage.  *Ryder v.*

8   *Lightstorm Entm't, Inc.*, 201 Cal. Rptr 3d. 110, 122 (Cal. Ct. App. 2016), review

9   denied (July 13, 2016).[13]  The same elements comprise a cause of action for

10  negligent misrepresentation, except there is no requirement of intent to induce

11  reliance.  *Cadlo v. Owens-Illinois, Inc.*, 23 Cal. Rptr. 3d 1, 5 (Cal. Ct. App. 2014)

12  (internal citation omitted).  The absence of any one of these required elements will

13  preclude recovery.  *Wilhelm v. Pray, Price, Williams & Russell*, 231 Cal. Rptr. 355,

14  358 (Cal. Ct. App. 1986)

15        Plaintiffs have failed to plead their fraud-based claims with sufficient

16  particularity.  Plaintiffs refer broadly to a variety of risks and warnings that

17  Novartis allegedly misrepresented and concealed through "prescribing information

18  and labeling, Dear Healthcare provider letters, press releases, patient information

19  leaflets, and/or Patient Medication Guides," *see* Compl. ¶¶ 96(a)-(i), 97, but they

20  fail to identify with specificity the purported misrepresentations or concealments

21  upon which Mrs. White or her physician relied.  *See, e.g.*, *In re Hydroxycut Mktg.*

22  *& Sales Practices Litig.*, No. 09MD2087-BTM AJB, 2010 WL 2232151, at *3

23  (S.D. Cal. June 3, 2010) (dismissing fraud claim where plaintiff alleged generally

24

25  _____

26  [13]As discussed *supra*, plaintiff must further allege that Novartis was under a duty to

27  disclose the allegedly omitted information. *See, e.g., Baggett v. Hewlett-Packard Co.*, 582 F. Supp. 2d 1261, 1267 (C.D. Cal. 2007).

28

1   that she decided to purchase defendant's product based on television and radio ads

2   but failed to identify the "specific advertisements or product labeling upon which

3   she relied"); *see also Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392-

4   1393 (9th Cir. 1988) ("[The Ninth Circuit has] interpreted Rule 9(b) to mean that

5   the pleader must state the time, place and specific content of the false

6   representations as well as the identities of the parties to the misrepresentation.").

7         Regarding intent, plaintiffs allege that Novartis "deliberately and

8   intentionally misrepresented to, and omitted and/or concealed materials facts from

9   Plaintiff's prescribing physician and . . . downplayed the serious risks of SJS and

10   TEN."  Compl. ¶ 96.  In fact, plaintiffs describe in the Complaint how Novartis

11   repeatedly and continually updated the Tegretol® labeling to warn of the risk of SJS

12   and TEN.  *See, e.g.*, *id.* ¶ 37 ("In 2013, the Tegretol labeling was *again* updated to

13   reflect warnings about the increased risks for rashes and SCAR, including

14   SJS/TEN . . .") (emphasis added).

15         To the extent plaintiffs rely on allegations that Novartis could have or should

16   have given different or additional warnings, *see, e.g.*, Compl. ¶ 38 ("While the

17   labeling for Tegretol . . . mention[s] . . . [a] *moderate* increased risk . . . . it does not

18   provide the relative risks or odds ratios . . . ), those are not allegations of intent to

19   defraud; rather, those allegations would go to a traditional failure-to-warn claim and

20   are patently insufficient to show fraud.  *See Sukonik v. Wright Med. Tech., Inc.*,

21   No. CV1408278BROMRWX, 2015 WL 10682986, at *16 (C.D. Cal. Jan. 26,

22   2015) (allegations that defendant "purposefully downplayed and understated the

23   serious nature of the risks associated with the use of the [medical] device"

24   insufficient to establish intent).[14]

25

26   _____

27   [14] Because plaintiffs claim that Novartis misrepresented or concealed information in
Tegretol®'s FDA-approved warnings, *see* Compl. ¶¶ 87, 89-91, these claims are

28

1    Moreover, plaintiffs fail to allege actual and justifiable reliance upon the

2    alleged misrepresentation or concealment.  Plaintiffs make the vague allegation that

3    "[i]n reliance upon Novartis's misrepresentations (and the absence of disclosure of

4    serious health risks), Plaintiff's prescribing physician prescribed Tegretol to

5    Plaintiff . . ." Compl. ¶ 100.  Such conclusory allegations will not suffice.[15]  Under

6    _____

7    additionally pre--empted by federal law.  The FDA governs the content of these

8    "representations," not state law.  *See, e.g.*, 21 C.F.R. §§ 201.57 ("Specific requirements on content and format of labeling for human prescription drug"),

9    202.1 ("Prescription-drug advertisements"), 200.5 ("Mailing of important

10   information about drugs").Plaintiffs concede that the Tegretol® labeling was continually updated to contain safety warnings *mandated by the FDA*.  *See, e.g.*,

11   Compl. ¶ 33 (in September 2007, "at the request of the FDA" Novartis made

12   labeling changes regarding the risk of SJS and TEN from carbamazepine).  Thus,

13   by alleging that Novartis misrepresented the safety of Tegretol® or concealed safety information, plaintiffs are claiming that Novartis committed fraud on the FDA, a

14   claim that is pre-empted by federal law under *Buckman Co. v. Plaintiffs' Legal

15   Comm.*, 531 U.S. 341 (2001).  *See also Frere v. Medtronic, Inc.*, No. EDCV1502338BRODTBX, 2016 WL 1533524, at *9-10 (C.D. Cal. Apr. 6, 2016)

16   (finding, under *Buckman*, that to the extent plaintiffs' fraud and fraudulent

17   concealment claims are "based on Defendants' alleged misrepresentations [on the label], her claim is impliedly preempted" because it seeks to impose duties on the

18   defendant beyond those required by federal regulation). A finding of liability based

19   on plaintiffs' state law fraud-based claims would "inevitably conflict with the FDA's responsibility to police fraud consistently with the Administration's

20   judgment and objectives."  *Buckman*, 531 U.S. at 349-50; *see also Frere*, 2016 WL

21   1533524, at *9.

22   [15] Nor can plaintiffs rely on the "sworn affidavit" of Mrs. White's neurologist to establish reliance.  *See* Compl. ¶ 3 n.1 (referring to, without attaching, the affidavit

23   of plaintiff's prescribing physician "executed . . . in support of her claims" that she

24   was prescribed Novartis' branded carbamazepine drug).  Although a "written instrument" attached to a complaint may be considered part of the complaint under

25   Federal Rule of Civil Procedure 10(c), the type of instruments that qualify for

26   incorporation "consist largely of documentary evidence, specifically, contracts, notes, and other writings on which a party's action or defense is based."  *DeMarco

27   v. DepoTech Corp.*, 149 F. Supp. 2d 1212, 1220 (S.D. Cal. 2001) (internal

28

-21-
NOVARTIS'S MPA ISO MOTION TO DISMISS

1  California law, "the mere assertion of 'reliance' is insufficient.  The plaintiff must

2  allege the specifics of his or her reliance on the misrepresentation to show a bona

3  fide claim of actual reliance." *Cadlo*, 23 Cal. Rptr 3d at 5; *see also Sukonik*, 2015

4  WL 10682986, at *16 (dismissing fraud and fraudulent concealment claim where

5  plaintiff failed to "plead facts demonstrating that [s]he [or her prescribing

6  physician] was actually exposed to the 'incomplete and inaccurate' promotional

7  materials and found them to be material in selecting the [defendant's product].")

8          Accordingly, for the additional reason that plaintiffs failed to plead with

9  specificity the alleged material representation made by Novartis, intent to defraud,

10  and actual and justifiable reliance by her physician, their claims for fraud, fraud by

11  concealment, and negligent misrepresentation must be dismissed.  *See Sherman v.*

12  *Stryker Corp.*, No. SACV 09-224JVS(ANX), 2009 WL 2241664, at *3 (C.D. Cal.

13  Mar. 30, 2009) (dismissing fraud claims where plaintiff failed to "specify who

14  made the alleged representation, when the representation was made, where the

15  representation was made, or how the representation was communicated."); *see also*

16  *Kelley v. Rambus, Inc.*, 384 F. App'x 570, 573 (9th Cir. 2010) (affirming dismissal

17  of negligent misrepresentation claim for failure to "meet the heightened pleading

18  standards" of Rule 9(b)).

19

20  _____

21  quotations omitted).  "Witness affidavits and other exhibits containing largely

22  evidentiary material" do not qualify.  *See Montgomery v. Buege*, No. CIV. 08-385
    WBS KJM, 2009 WL 1034518, at *3 (E.D. Cal. Apr. 16, 2009) (striking

23  declaration attached to plaintiff's complaint); *see also Galvan v. Yates*, No. CVF
    05-0986 AWI LJO, 2006 WL 1495261, at *4 (E.D. Cal. May 24, 2006) (striking

24  witness declarations attached to plaintiffs' complaint and granting defendants'

25  motion to dismiss because declarations "are not 'written instruments' within the
    meaning of Rule 10(c), but rather are in the nature of evidence submitted to bolster

26  Plaintiffs' allegation[s] . . .").  Accordingly, even if it was attached, the purported

27  affidavit of plaintiff's neurologist cannot be considered at the dismissal stage.

28

NOVARTIS'S MPA ISO MOTION TO DISMISS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CONCLUSION

For the foregoing reasons, plaintiffs have failed to state a claim for which relief can be granted pursuant to Rules 12(b)(6), 12(b)(2) and 9(b).  The Court should grant Novartis's motion to dismiss all claims with prejudice, or in the alternative, pursuant to Novartis's contemporaneously filed Motion to Stay, stay the case pending the California Supreme Court's decision in *H.(T.) v. Novartis Pharm. Corp.*, 371 P.3d 241 (Cal. 2016).


DATED:  August 16, 2016

Kathryn S. Jensen (appearance *pro hac vice*)
(kjensen@hollingsworthllp.com)
Katharine R. Latimer (appearance *pro hac vice*)
(klatimer@hollingsworthllp.com)
HOLLINGSWORTH LLP
1350 I Street, N.W.
Washington, DC  20005
Telephone:  (202) 898-5800
Facsimile:  (202) 682-1639

Respectfully submitted,

/s/ *Steven R. Platt*
Steven R. Platt
State Bar No. 245510
(splatt@pmcos.com)
PARKER, MILLIKEN, CLARK, O'HARA & SAMUELIAN, P.C.
555 S. Flower Street, 30th Floor
Los Angeles, CA 90071
Telephone: (213) 683-6500
Facsimile:  (213) 683-6669

Attorneys for Defendant
NOVARTIS PHARMACEUTICALS CORPORATION